## In re McVEY.

*(District Court, D. Calfornia.   April, 1885.)*

COURTS-MARTIAL—JURISDICTION OF CIVIL COURTS—HABEAS CORPUS.

Within the sphere of their jurisdiction, the judgments and sentences of courts-martial are as final and conclusive as those of civil tribunals of last resort, and the only authority of the civil courts is to inquire whether the military authorities are proceeding regularly within their jurisdiction.  If they are, they cannot be interfered with, no matter what errors may be committed in the exercise of their lawful jurisdiction.

On *Habeas Corpus.*

*J. H. Dickinson,* for petitioner.

*Lieut. Col. W. Winthrop,* Dep. Judge Adv. Gen., for respondent, Major A. M. Randol, First artillery.

HOFFMAN, J.   The return to the writ shows that the petitioner is a military convict, imprisoned under the sentence of a military court-martial, regularly convened at Fort Vancouver, Washington Territory. The record of the court-martial shows that the petitioner was tried for having deserted on the thirteenth of April, 1877, from an enlistment made March 12, 1877.   In his defense, the petitioner pleaded that at the time of his enlistment he was a *deserter;* that in 1875 he had been tried and convicted of a desertion from a previous enlistment; that he had been sentenced to imprisonment and to be dishonorably discharged from service; that he had escaped from custody without receiving a certificate of discharge and had subsequently made the enlistment, for desertion from which he was on trial.   He therefore claimed that under section 1118 of the Revised Statutes, which prohibits the enlistment of a "deserter," his enlistment was void, and that he could not be held for the violation of an engagement prohibited by law.   The court overruled the plea, and the petitioner was tried, convicted, and sentenced.   It is not denied that, within the sphere of their jurisdiction, the judgments and sentences

of courts-martial are as final and conclusive as those of civil tribunals of last resort. *In re Bogart*, 2 Sawy. 402; *Dynes* v. *Hoover*, 20 How. 82.

The only authority of the civil courts is "to inquire whether the military authorities are proceeding regularly within their jurisdiction. If they are, we cannot interfere, no matter what errors may be committed in the exercise of their lawful jurisdiction." Per Mr. Justice SAWYER, *In re White*, 9 Sawy. 52; S. C. 17 FED. REP. 723. In the same case it is observed:

"It is not disputed that a military court-martial has general jurisdiction to try a party for the military offense of desertion.  *  *  * This covers the whole ground. Jurisdiction to determine whether the party is guilty of the offense necessarily involves the jurisdiction to determine what constitutes the offense under the statute,—jurisdiction to construe the statute and adjudge what under the statute constitutes a good defense against the prosecution; and to determine whether or not the facts exist which are claimed to constitute a valid defense."

If, as is held by Mr. Justice SAWYER, "jurisdiction to determine whether a party is guilty of the offense necessarily involves the jurisdiction to determine what constitutes the offense," the proceedings of the court-martial in the present case were within its jurisdiction.

I have met with no reported cases where a defense such as now set up has been entertained; still less where the sentence of a court-martial, after disallowance of the plea, has been held void for want of jurisdiction. The defense, however, has heretofore been interposed. In the very valuable digest of opinions of the judge advocate general by Lieut. Col. Winthrop, I find a note of an opinion by the judge advocate general, as follows:

"A deserter who enlists, and afterwards again deserts, cannot, on being brought to trial for the second offense, defend on the ground that his enlistment was void, and that he, therefore, is not amenable to trial. A plea or defense to this effect should not be sustained by the court."

I cite this ruling to show that the defense now relied on has been heretofore set up, and that the question of its validity has apparently been left to the determination of the military tribunal.

It is true that *In re Wall*, 8 FED. REP. 85, Mr. Justice LOWELL declines to decide whether an illegally enlisted minor who openly leaves the service, after formally demanding his discharge, would be guilty of desertion; but he does not intimate that if tried and convicted by a court-martial, its judgment would be wholly void for want of jurisdiction. By the forty-seventh article of war it is provided—

"That any officer or soldier who, having received pay, or having been duly enlisted in the service of the United States, deserts the same, shall, in time of war, suffer death," etc.

It would seem that in this article the reception of pay is treated as the equivalent of a due enlistment. In the case at bar, the petitioner was, at the time of his desertion, a *de facto* soldier of the United States. He had voluntarily assumed the obligations, and had at-

tempted to secure the rights, of an enlisted man. To avoid the consequences of his last crime he sets up as a defense that he has committed three previous offenses: (1) A former desertion; (2) an escape from confinement after conviction of that crime, and without waiting for a certificate of dishonorable discharge; (3) a fraudulent re-enlistment in violation of the law and under an assumed name. It was not claimed on the argument that during the time of his actual service he could commit with impunity *any* military offense. It was only contended that he could not commit the offense of desertion. The distinction is not very apparent. It would seem that he must be regarded either as a civilian or a soldier. If the former, he was not amenable to the military law. If the latter, he was subject to that law for any offenses against its provisions. But the claim to immunity from punishment for desertion would even extend to desertion by a sentry from his post, by which the safety of the army might be compromised, or to desertions in time of war in the face of the enemy, and even to desertions *to* the enemy for the purpose of conveying plans of fortifications or other information obtained in the course of his service.

It may be urged with great force (1) that by the general principles of law a man cannot profit by his own wrong, still less by his crime; (2) that the obvious intent of the statutory provisions prohibiting the enlistment of deserters was to attach an additional penalty for a crime, and not to confer an immunity from the consequences of its repetition; and (3) that the interests and even the necessities of the service forbid the allowance of the defense set up by the petitioner. But this question it is unnecessary, perhaps improper, now to decide; for even if the ruling of the court-martial was erroneous, this court has no jurisdiction to correct the error or to reverse its judgment.

Petitioner remanded.